

Carlton Hill, Charles W. Hills, Jr., and Charles F. Meroni, all of Chicago, Ill., and William G. Mahaffy, of Wilmington, Del., for plaintiffs.

Stuart C. Barnes and John Kisselle (of Barnes, Kisselle, Laughlin & Raisch), both of Detroit, Mich., and Hugh M. Morris, of Wilmington, Del., for defendant.

NIELDS, District Judge.

This is a patent infringement suit by Lyon, Incorporated, owner of two patents, and Lyon Cover Company, exclusive licensee thereunder, against Clayton & Lambert Manufacturing Company. United States patent No. 1,807,697, dated June 2, 1931, and United States patent No. 1,875,-316, dated September 6, 1932, were granted to George Albert Lyon for metal covers for spare tires of automobiles. The defenses are invalidity and noninfringement. This opinion is confined to the issues raised by the defense of noninfringement of the first patent and by both defenses to the second patent.

Metal covers protect spare tires from accidents and from the elements. They are highly decorative when mounted in the fender wells or at the rear of the car.

Formerly there were two general types of tire covers for spare tires on the market. One type was of canvas, linen, or other fabric. Being pliable and somewhat elastic, it would fit spare tires varying only slightly in size, tread, and width. When put on and off a few times, the surface cracked and had a tendency to slip around the tire. This type lacked rigidity to maintain a circular shape, and collapsed upon removal. Dealers had to carry a large number of different sizes. Moreover, fabric covers did not lend themselves to the decorative effect desired by automobile manufacturers. In the second type the tire was placed in a metal box or casing. This type was rigid and clumsy in appearance and tended to rattle and squeak. It did not fit spare tires of various sizes and shape, but inclosed a tire of given shape and contour. Lyon had made many inventions in the automotive field, including spring bumpers. He conceived the idea, embodied in his patents, of a cover that would clamp a spare tire whether on or off the car and by its own inherent resiliency fit the tire.

Plaintiffs' patented structure contains two elements: (1) A split resilient rim to extend about the periphery of the tire; (2) a side plate to cover all or a portion of the outer side of the tire.

### Patent No. 1,807,697

Claims 18 and 20 in suit are typical:

"18. In a spare tire cover a resiliently expansible and contractible split rim cooperating with other tire cover protecting means to resiliently hold the cover in tire cover engagement."

"20. A metal tire cover for spare tires comprising a side part to substantially cover the outer side wall of the tire and a tread covering part extending from said side part across the tread of the tire and provided with expansible and contractible means whereby the inner circumferential side of said tread part is brought into holding engagement with the tire."

In his specification the patentee states:

"The section 8 [the rim] is made in the form of a divided ring and is constructed of a size somewhat smaller than the tire to which it is to be applied. * * * The cold rolling operation will give this section [the rim] the required degree of resiliency so that it will grip the tire securely upon contraction of the section [the rim]. * * * Upon the release of the section [the rim] the resiliency of the material will cause the

same to contract so as to grip the tread portion of the tire firmly. The section 8 [the rim] when it contracts upon the tire, operates to hold the section 6 [the side plate] in position. * * * Upon the release of the section [the rim] after its expansion, the section [the rim] will contact upon the tire because of the resiliency of the material and will securely grip the tread surface of the tire and will engage the cushioning member 15 [rubber pads] so as to hold the section 6 [side plate] securely in position. * * * The section 8 [the rim] is so formed as to extend transversely across the tread portion of the tire and to project for some distance beyond this tread portion at its margins."

Patent No. 1,875,316

Application for this patent was filed October 27, 1928, and was copending with the application for the first patent. The Examiner held the original claims not patentable because the patentee only added a draw device to the first Lyon patent. In July, 1932, nearly four years after application and five months after this suit was started, the patentee amended his application by inserting claims 4, 5, 6, and 7 here in suit. Claim 4 is typical and reads: "4. A non-collapsible relatively rigid tire cover for spare tires comprising a side part to substantially cover the outer side wall of the tire and a tread-covering part extending from said side part across the tread of the tire provided with expansible and contractible means whereby said tread part is brought into holding engagement with the tire, said tread-covering part being convex and of such curvature as to provide clearance between that part of the tread when the tread-covering part is in contact with the tire and prior to the tightening of that part into secured engagement with the tire, and means for tightening the cover on the tire by drawing the ends of the tread-covering part together to secure the same in proper tire protecting position thereon."

In the specification of the second patent the patentee states: "The ring [the rim] is preferably made of sheet metal which has a certain degree of resiliency and is constructed so that it will normally assume an inside diameter somewhat less than the diameter of the periphery of the tire to which it is to be applied. * * * When the ring [the rim] is released, the spring of the metal will contract the same upon the tire. The ring may be flexed inwardly beyond the point to which it is contracted by the

spring of the metal to hold the cover securely upon the tire. * * * Further as best shown in Fig. 2 the ring or split rim or tread-covering portion 8 is convex and of such curvature as to provide clearance between it and the tread prior to the tightening of it into secured engagement with the tire whereby it may accommodate itself to variations in sizes of the tires but still be readily brought into snug engagement with the tire. * * *"

Resilient means the capacity to rebound. It is derived from two Latin words "re," back, and "silire," to leap. A resilient rim smaller than the spare tire is the "expansible and contractible means" of the claim. This is apparent when the claim and specifications are read together. Plaintiff amended his specification at the eleventh hour to bring in "clearance," never mentioned before. Plaintiffs' rim, like all rims that span the tread, is concave on the inside. It exerts a lateral grip as well as a circumferential clasp. In so doing it arches over the tread and forms a clearance. Such clearance is merely an incidental feature of the rim.

### Defendant's Construction

Defendant's tire cover has two elements: (1) A split rim with toggle clamp and five springs distributed around the inside of the rim; (2) a side plate covering the side of the spare tire and extending over the tread to the middle thereof. The rim overlaps the side plate at the middle of the tread of the spare tire. The spare tire rests against the springs. The toggle clamp holds the rim and the side plate together.

Defendant's metal cover is a box cover. In large part it follows the prior art. It is always of the same dimension and fits tires of various size only because of the limited flexibility of the five springs distributed around the inside of the rim. When the rim is expanded to cover a tire, no appreciable distortion of metal occurs. The rim will open only enough to receive the tire and permit the operation of the toggle lock. The diameter of the rim is greater than the diameter of the spare tire. The rim is made of sheet metal, not spring metal. It has flexibility, but very slight resiliency—only that of all sheet metal. It is incapable of holding itself on the tire. In flexibility it resembles a collar held in place by a collar button. By their compressibility the springs adapt defendant's cover to fit spare tires of various dimensions. They push the rim from the tire instead of holding the rim to

the tire. The toggle clamp ties defendant's rim and side plate together in boxlike construction. "Box" was appropriately defined by defendant's expert: "I am using that word 'box,' " he testified, "to indicate a construction of permanent, fixed dimensions and size rather than one that has a variable dimension and size as in the case of plaintiffs' structure, where the tire band can be contracted to fit tires of different diameters, as stated in the specification."

The prior art is partially illustrated in Hammond 1,651,769. In 1921, more than 10 years before plaintiffs' first patent, Hammond proposed a metal cover supported only by the spare tire. He says: "Another object of my invention is to provide a sectional casing of sheet metal of the described character, which will be wholly suspended upon the tire." Hammond suggested a decorative cover harmonizing with the car: "A still further object of my invention is to provide a metallic tire cover which will be attractive in appearance, which may be enameled in the same color as the automobile and of the same general finish, and as a consequence thereof, may be washed and polished with the car without injury to the casing." He further provides springs like the springs of defendant to adapt the rim to tires of varying diameter: "In order to effect a mounting on a spare tire which may perchance be somewhat smaller in size or diameter than is intended to be accommodated within a casing of a definite given size, I may provide spring members 12 attached at suitable points around the periphery of the casing which are adapted to engage the curved surface of the tire and thus form a snug fit between the sheet metal tire housing and the tire, in a manner thought to be obvious."

The essential difference between the patented structure of plaintiffs' first patent and defendant's construction will be apparent when contrasted in parallel columns:

| Plaintiff | Defendant |
| --- | --- |
| The rim is sheet metal having high resiliency due to the carbon content and rolled from cold rolled steel. | The rim is sheet metal having flexibility but little resiliency. |
| The rim snaps back. It binds itself with its own resilience. | The rim is incapable of holding itself on and will fall off without the toggle clamp. |
| The cover will not operate without a tire inside. | The cover will stand up and operate effectively without a tire inside. |
| The rim is of less diameter than the tire and must be expanded to be put on. | The rim is of greater diameter than the diameter of the spare tire. |
| The exterior diameter of the cover will vary with different sized tires. | The exterior diameter of the cover will always be the same. It fits tires of various sizes only because of the limited flexibility of springs distributed around the inside of the rim. |
| The side plate does not reach the tread. | The side plate extends almost to the centre line of the tread. |
| The rim covers the full width of the tread. | The rim extends slightly more than half way across the tread. |
| The rim hugs the tire. | The springs push the tire from the rim. |
| The cover is adaptable to tires of various dimensions because of the inherent resiliency of the rim. | The cover is a rigid box-like structure always of the same final dimension regardless of the tire. |

■ It is perfectly apparent that defendant does not infringe plaintiffs' first patent.

■■ The device in plaintiffs' second patent was never manufactured. Lyon testified that they had not manufactured or sold the cover of the second patent commercially. The file history of the second patent shows that the claims were first rejected. An amendment was presented adding more claims. These claims were rejected on Lyon's first patent 1,807.697 on the ground that merely to add a draw device to Lyon's first patent was not a patentable invention. The Examiner stated: "Merely to apply an added drawing means on the device patented would not involve invention over the teachings of Sutherland, above, or Murray, of record. Further, such idea of drawing means for a split band is notoriously old in barrel hoops, split ring closure fasteners for

334

cans and bottles, and pipe couplings." The art is full of devices for pulling metal tire rim parts together at their meeting ends.

Claim 4 of Lyon's second patent had been rejected in the Patent Office as adding nothing to Lyon's prior patent except a clamping device. Thereupon there was inserted in this claim as above recited the additional words "said tread-covering part being convex and of such curvature as to provide clearance between that part and the tread when the tread-covering part is in contact with the tire and prior to the tightening of that part into secured engagement with the tire." Identical language appears in claims 5 and 6 and very similar language in claim 7. Thereupon the Patent Office allowed the four claims, and this singular situation followed: Having held that merely to add a draw device to the ends of the split rim of Lyon's first patent did not involve invention, the Patent Office held that, when the claims were amended to bring in "clearance," the claims were good.

Clearly the "clearance" possesses no function. It depends upon the shape of the tire. If the rim be flatter than the tire, there is no clearance. In some cases the clearance is caused by the lap of the rim over the side plate, and the clearance would only be the thickness of the side plate. Such clearance is shown in the first Lyon patent.

Defendant's rim is not "of such curvature" as to provide clearance between rim and tread. This curvature has nothing to do with the clearance. The larger diameter of defendant's rim together with the springs provide the clearance. The clearance would be there without any curvature at all even if the rim were flat. There is bound to be clearance in any tire cover when the tire is worn or has a tread flatter than the cover. Patentability cannot be predicated on such a mere incident.

Claim 4, as well as claims 5 and 6, calls for a tread-covering part or rim "provided with expansible and contractible means whereby said tread part is brought into holding engagement with the tire." Similar language is found in claim 20 of the first patent. In both patents the words "expansible and contractible means" connote the resiliency of the tire. Defendant does not utilize this means. Defendant's cover will fall off if the toggle clamp is not used. Each of these claims also discloses the use of a toggle device in the words "means for tightening the cover on the tire by drawing the ends of the tread-covering part togeth-

er." Defendant does not have the first holding means of these claims; i. e., resiliency nor any equivalent to it. Here is an element of both of plaintiffs' patents wholly lacking in defendant's structure, and under the familiar rules there can be no infringement. Moreover, the only elements of the second patent not found in the first are: (1) A toggle clamp; (2) "clearance." Adding these elements to the first patent was not invention. The claims of the second patent are unpatentable over the subject-matter of the first patent. A patentee is not permitted to add such a pull-to clamp and such "clearance" to an existing patent and then claim another new patent more than two years after the first patent issued. The oft-repeated words of the Supreme Court are applicable: "It was never the object of those laws [patent laws] to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures." Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 231, 27 L.Ed. 438. Accordingly I am of opinion that the second patent is both invalid and not infringed.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Equity Rule 70½, 28 U.S.C.A. following section 723.

The bill of complaint must be dismissed.